FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

APR 25 2016

JAMES N. HATTEN, CLERK
By: J. Brannon, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| Ryan Patrick Nicholl<br><br>*Pro Se, Plaintiff*<br><br>*v.s.*<br><br>Board of Regents of the University System of Georgia<br><br>*Defendant* | Civil Action No. _____<br><br>**1:16-CV-1350** |

## COMPLAINT

Ryan Patrick Nicholl, the Plaintiff, hereby brings this civil action against the Board of Regents of the University System of Georgia, the Defendant. The following claims are asserted before this Court.

1. Jurisdiction in this court is proper pursuant to 28 U.S.C. § 1331. The Atlanta Division of this Court has jurisdiction within Cobb County, Georgia. The Plaintiff is a resident of Cobb County, Georgia, the dispute arises out of dealings within Cobb County, Georgia, and the claims hereinafter include claims related to Federal Law.

2. That Kennesaw State University does not appear to be a distinct legal entity from the Board of Regents. The claims hereafter related to interactions with Kennesaw State University and by extension the Board of Regents.

1

3. The Plaintiff was charged as follows:

- Access 40 Meal Plan - Fall 5208 13-AUG-2015 $475.00

- Access 14 Meal Plan - Spring 5203 07-JAN-2016 $160.00

That on UNKNOWN DATE the Plaintiff did converse via telephone with the Culinary Department asking for the the first meal plan to be removed. That the culinary Office of KSU did direct the Plaintiff to the Legal Department of KSU. On 2015-8-20 the Plaintiff did submit via email to <asklegal@kennesaw.edu> a petition to remove meal plan. In reference to the previous item, on 2015-8-20 the Plaintiff did submit a request for confirmation of receipt of this email. That on 2015-8-26 the Plaintiff did submit an Open Records Act Request via email to <asklegal@kennesaw.edu> regarding the meal plan. That on 2015-8-31 the Plaintiff did receive a collection of documents, reading in part (emphasis added): 

Meal Plan Exemption for 2015-2016

[...]

All forms must be received no later than **August 3rd 2015 by 5:00pm. No exceptions.** Failure to submit needed forms by the prescribed date will result in a failed appeal. The Appeals Committee must also have a completed and accurate FAFSA for 2015-2016

That such Meal Plan documents provided options for opting out only due to medical or financial reasons, but no options for opting out due to legal reasons. That on 2015-8-31 the Plaintiff did submit a request for a phone conversation regarding the meal plan. That on UNKNOWN DATE the Plaintiff did converse via telephone with Jermaine Johnson, KSU Assistant General Counsel and explained such grounds as the Plaintiff then believed were sufficient for removal of the meal plan. That on 2015-9-2 Jermaine Johnson did request more information about the concerns in writing. That on 2015-9-6 the Plaintiff did submit in writing all concerns known to the Plaintiff at the time.  That on 2015-9-12 the Plaintiff did request confirmation that the aforementioned email was received. That on 2015-9-25 the Plaintiff did declare that the Plaintiff still contested the charges via email. That on 2015-10-24 the Plaintiff did submit a complaint to the Board of Regents via an online form. That on 2015-10-26 the Board of Regents did direct the Plaintiff to the Culinary Department in response to the previously mentioned submission. That on 2016-1-20 Kennesaw State University was SERVED by a licensed process server with a demand for an administrative hearing to contest the meal plan charges. That Jermaine Johnson claimed that the claim would be addressed by an "administrator from operations". That Kennesaw State University did not schedule any administrative hearing. That Jermaine Johnson later rejected the claims without scheduling a hearing. That the Plaintiff also made additional phone calls and communications not specified above. Such

3

interactions including repetitive referrals by the Culinary Department to the Legal Department and by the Legal Department to the Culinary Department.

4. That the Plaintiff did not agree to the Mandatory Meal Plans and such charges are therefore invalid. When registering, the only mention of the meal plans was that students "may" be charged a meal plan. This statement was accompanied to a link to information about meal plans in general. Such information provided a numerous number of links and was part of the main website. The Plaintiff did discover the existence of at least one "meal plan contract". Such contract had an individual signature line. The Plaintiff at no point accepted this meal plan contract or signed any such contract. Nor was the Plaintiff notified within the registration agreement that the Plaintiff would be bound by the terms of any such meal plan contract, or that such meal plan contract was incorporated into the registration agreement. Nor was the Plaintiff presented the meal plan contract and asked to sign it or otherwise agree to the terms and conditions of the separate meal plan contract provided therein. The Plaintiff held a reasonable belief that if the Board of Regents decided to charge a meal plan, the Plaintiff would be presented such contract and asked to sign it. It appears that the Defendant believes it is entitled to create a contract by simply issuing an internal policy that all students must purchase meal plans, and that it can bind students via contract law without the informed consent of such students simply because it is



4

"the Government". Nor does posting a policy about which students will be charged a meal plan contract somewhere on the incredibly large and disorganized website hosted for Kennesaw State University constitute adequate notice.

5. That the the registration agreement terms relating to the Mandatory Meal Plans are illusionary and therefore invalid. The Plaintiff was at no point presented a specific and articulable meal plan contract to which it was clearly specified that the Plaintiff was agreeing to. The terms of the registration agreement did not specify that the Plaintiff "would" be bound by such terms. It is well established within Georgia law that valid contracts must be sufficiently specific as to provide all parties with adequate notice of the exact requirements required of them. A contract which places no obligation on the Board of Regents and allows it to unilaterally dictate the terms of the agreement without consent of the parties is illusionary given that equally, by the same terms, the Board of Regents could ignore such terms completely and remain in compliance with such terms. 

6. That the Plaintiff did not obtain any meal plans during the duration of availability of at least the first meal plan, making the contract void due to unconscionably and failure of consideration.

7. That the Board of Regents may have engaged in taking funds via the Mandatory Meal Plan to illegally appropriate them to a third party.

8. That the Mandatory Meal Plans are illegal because the "opt-out" deadline ends before eligibility for the mandatory meal plan is determined, violating Due Process under both the Georgia Constitution and U.S. Constitution. The administrative "Mandatory Meal Plan" opt-out procedures are inadequate because they do not provide an option to opt-out for legal reasons. The Board of Regents is not capable of holding a jury trial, therefore administrative dispute resolution would violate the Plaintiff's right to a jury trial pursuant to the Georgia constitution. Administrative dispute resolution is illegal because it violates the Plaintiff's right to the courts as the matter is not one of discretion. Administrative dispute resolution is illegal because this would consist of an administrative agency exercising judicial power. Administrative dispute resolution is illegal because the Board of Regents and Kennesaw State University's administration is grossly inefficient, unresponsive, inexcusably slow and completely and utterly incompetent. Due Process cannot be satisfied by such an administrative dispute resolution process.

9. The Mandatory Meal Plans are not authorized by the Board of Regents because the implementation does not meet the definition of a "food service fee". (Board of Regents Policy Manual § 7-3-2-2)

10. The Mandatory Meal Plans are in general restraint of trade, and an illegal tying agreement pursuant to GA Code § 13-8-2. The Mandatory Meal Plans violate 15 U.S.C. § 1-7 et seq. and 15 U.S.C. § 12-27 et seq. The Manda-

6

tory Meal plans tie unrelated services of food and education together. The Defendant wishes to force students to purchase a Mandatory Meal Plan to promote interests of specific business(es) in furtherance of a monopoly. Because there are a large number of students, the Mandatory Meal Plan affects a substantial amount of commerce. According to KSU's Website:

Total enrollment: 33,000 (based on Fall 2015)

If each student is charged $160 per semester, this results in $5,280,000 of mandatory meal plan purchases per semester, or approximately $10,560,000 per year. If 33,000 students were each charged $475, this would have resulted in $15,675,000 in forced meal plan purchases in one semester.



11. The Board of Regents does not posses sovereign immunity in regard to this dispute. The Board of Regents consists of active market participants and is not actively supervised by the state. Furthermore, the Mandatory Meal Plan charges are not an exercise of sovereign discretion from which sovereign immunity is derived. Any state notion of sovereign immunity is unconstitutional to the extent it exceeds the level of sovereign immunity provided under Federal Law. Sovereign immunity is also waived because the Mandatory Meal Plans are a form of *de facto* age discrimination. Sovereign immunity is also waived pursuant to the Georgia Constitution and Georgia Code because the dispute arises over contract. (Georgia Constitution Article I. Section II.

Paragraph IX. (c)) (GA Code § 50-21-1)

12. Any regulation requiring students to purchase specific meal plans burdens interstate commerce and is therefore illegal as it exceeds the authority of the State of Georgia. The Plaintiff wishes to purchase his meals from out of state, and the Defendant conspires to provide advantages for certain local eateries. When the State compels individuals to purchase, from particular in-state corporations, life essential products, it in effect discriminates against out-of-state corporations which provide the same services. Were the State to require that all individuals attending university purchase a "Mandatory Meal Plan" that provided enough meals such that no additional meals were required, the State could in effect, eliminate the interstate market for food products among university students. The only difference between the hypothetical example and the claims here is a matter of degree. Though the actions of the Board of Regents do not eliminate that interstate market, they have a substantial effect of diminishing it. The Mandatory Meal Plans are not taxes as they are not transferred into the general fund of the State's treasury, and some individuals are exempted from the Mandatory Meal Plans for financial or medical reasons, not clearly defined and at the discretion of administrators. In any case, if the Mandatory Meal Plans *were* a tax, they would be an unconstitutional one under the Due Process, Equal Protection, First Amendment, Fifth Amendment, and other clauses.



13. The denial of higher education without agreeing to the terms of a contract is a sufficient coercive factor to implicate the fundamental rights under both the State and Federal Constitution. There exists a substantial number of occupations that one cannot legally entertain without obtaining a license, to which a degree is a prerequisite. By requiring potential practitioners of specific occupations to obtain degrees from accredited institutions in order to practice such occupations, the Government requires individuals to accept one of a number of certain contracts in order to legally practice in the fields of such regulated occupations. By extension, the contracts themselves gain a character of law and governmental power imbued in them by professional licensing requirements. When the very institutions that we call "public" schools fail to provide contracts which respect the fundamental rights of individuals, it becomes questionable whether it is possible for a person to obtain licensing in a regulated occupational field without surrendering their constitutional rights. The government must provide avenues for professional licensing that do not require agreement to contracts which infringe the fundamental rights of the people. In consideration of the character of law imbued in such contracts between public universities and their students, such contracts ought to be subject to the same standards of review as statutes.

14. Choice of culinary provider is an unenumerated right. (Georgia Constitution Article I. Section II. Paragraph XXVIII.) (U.S. Constitution, Ninth Amend-

ment) When our founding fathers drafted the Constitution, it is highly unlikely that they conceived of a government which would try to regulate the place of food consumption and the meals consumed by individuals.

15. That requiring students to purchase a meal plan is illegal because it coerces students to assemble in specific areas. This violates the freedom of assembly, because only certain persons may assemble at the eateries. Meals are a traditional time in which persons assemble. (GA Constitution ARTICLE I. SECTION I. Paragraph IX.)

16. The Mandatory Meal Plans are illegal because eating is a social activity that affects an individual's social status and the State may not regulate social status. More generally, that the Georgia Constitution should be interpreted to preclude the regulation of social activity in general. (GA Constitution ARTICLE I. SECTION I. Paragraph XXV.)

17. The Mandatory Meal Plans are illegal because students are illegally searched upon entry to the eatery without reasonable suspicion or probable cause.

## JURY TRIAL

The Plaintiff hereby demands a jury trial.

## PRAYER

The Plaintiff hereby requests the following relief:

10

1. That this Court enjoin the Board of Regents from enforcing any Mandatory Meal Plan.

2. That this Court award the Plaintiff court costs associated with this action.

3. That this Court award the Plaintiff treble damages of $1905 pursuant to Federal Antitrust Law, or any other amount this Court deems just and proper.

4. That this Court appoint a Special Master to oversee the administration of Kennesaw State University to ensure Kennesaw State University upholds Due Process.

Respectfully submitted,

*[signature]* 2016-4-18

RYAN PATRICK NICHOLL     Date

950 HUDSON RD SE

APT 202

MARIETTA GA, 30060

(678) 358-7765

*Pro Se Plaintiff Name, Address and Phone*

## AFFIDAVIT

Ryan Patrick Nicholl, being duly sworn under oath and under penalty of perjury, states that all foregoing claims of fact are true and correct.

Sworn to and subscribed before me this 18 day of APRIL, 2016.

TARANG SHAH

Notary Public Name (Print)

Notary Public Signature

Notary Seal