FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUL - 5 2016

JAMES N. HATTEN, Clerk

By: _____ Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Ryan Patrick Nicholl

*Plaintiff*

*v.s.*

Board of Regents of the University

System of Georgia

*Defendant*

Civil Action No. 1:16-CV-1350-AT

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
## AMENDED MOTION TO DISMISS

## Contents

| | | |
|---|---|---|
| 1 | Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| 2 | Sovereign Immunity and Federal Question Jurisdiction . . . . . . . . | 3 |
| | 2.1 Interstate Commerce Jurisdiction - Board Members . . . . . . . | 3 |
| | 2.2 Interstate Commerce Jurisdiction - Board of Regents . . . . . . | 4 |
| | 2.3 Inherent Jurisdiction . . . . . . . . . . . . . . . . . . . . . | 7 |
| | 2.4 Primacy Jurisdiction . . . . . . . . . . . . . . . . . . . . . | 8 |
| | 2.5 Analysis of State Case Law . . . . . . . . . . . . . . . . . . | 10 |
| | 2.6 Analysis of Federal Case Law . . . . . . . . . . . . . . . . . | 11 |
| | 2.7 Analysis of Defendant's Arguments for Sovereign Immunity . . . | 13 |

3    Standing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14

4    Illegal Tying Arrangement Claim . . . . . . . . . . . . . . . . . . . .    15

    4.1    Facts Required to Show Tying Arrangement . . . . . . . . . . .    15

    4.2    Facts Required to Show Tying Arrangement is Illegal . . . . . . .    16

    4.3    Definition of Market Power Within the Context of a Tying Ar-
        rangement . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    17

5    Due Process Claims . . . . . . . . . . . . . . . . . . . . . . . . . . .    18

6    Board of Regents Policy Manual Claims . . . . . . . . . . . . . . . .    19

    6.1    Exclusion of External Materials in a Motion to Dismiss . . . . . .    20

7    Negative Commerce Clause Claim . . . . . . . . . . . . . . . . . . .    20

8    All Other Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . .    21

9    Burden of Motion to Dismiss . . . . . . . . . . . . . . . . . . . . . .    21

10   List of Cited Case Law . . . . . . . . . . . . . . . . . . . . . . . . .    23

    10.1   State . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    23

    10.2   Federal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    23

11   Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    24

## 1. Introduction

This memorandum is in response to the Defendant's amended motion to dismiss. Defendant alleges several reasons why the Plaintiff's complaint should be dismissed, including that the Defendant is entitled to sovereign immunity, that the Plaintiff failed to state a claim, that the Plaintiff does not have standing, and that

2

the Plaintiff pleaded no facts which allows the Court to reach the conclusions that the Defendant is liable for the wrongdoings alleged. This memorandum will explain why all of those conclusions are wrong.

## 2. Sovereign Immunity and Federal Question Jurisdiction

Sovereign Immunity is a jurisdictional question. It is a limitation on the jurisdiction of the federal courts. There are several grounds upon which the Plaintiff believes this Court can take jurisdiction over this case. Although all of these grounds are elements of Federal Question jurisdiction, in order to differentiate them from each other I will refer to them as Interstate Commerce Jurisdiction, Inherent Jurisdiction, and Primacy Jurisdiction.

### 2.1. Interstate Commerce Jurisdiction - Board Members

The Defendant cannot claim sovereign immunity in this case. Sovereign immunity is conditional. According to the United States Supreme Court, sovereign immunity is not provided to an agency merely because it is designated as an agency by the State:

> "(3) The Board's argument that entities designated by the States as agencies are exempt from Midcal's second requirement cannot be reconciled with the Court's repeated conclusion that the need for supervision turns not on the formal designation given by States to regulators but on the risk that active market participants will pursue private interests in restraining trade." (*North Carolina State Bd. of Dental Examiners v. FTC*, 574 U.S. ___ (2015))

3

In a recent case where the North Carolina State Board of Dental Examiners attempted to use sovereign immunity, the Supreme Court denied it, stating:

> "Because a controlling number of the Board's decisionmakers are active market participants in the occupation the Board regulates, the Board can invoke state-action antitrust immunity only if it was subject to active supervision by the State, and here that requirement is not met." (*NORTH CAROLINA STATE BD. OF DENTAL EXAMINERS v. FTC (2015)*)

Neither was Kennesaw State University's meal plan was supervised by the Board of Regents nor was the Board of Regents supervised by the State. Common law sovereign immunity only applies when the state acts in the capacity of a sovereign. Even if the 11th Amendment were to be interpreted textually instead of this way, it would not bar this action because the Plaintiff is a resident of the same State. There is no interpretation of the 11th amendment, whether based on intent or textually, that could bar this action. Regardless of this, this Court is bound to follow the United States Supreme Court's interpretation of the 11th Amendment.

The court need not look further than the Plaintiff's pleading that the board of regents consists of active market participants and is not actively supervised by the state. For the purposes of a motion to dismiss, all statements are assumed to be true.

## 2.2. Interstate Commerce Jurisdiction - Board of Regents

But even if the Board of Regents did not consist of active market participants, this requirement is not necessary to void a claim of sovereign immunity. Sovereign

4

immunity applies only to "state action". The Federal Government, not the States government, has the authority to regulate interstate commerce. When the State engages in actions which affect interstate commerce, it does not act in capacity as a sovereign, but as a private market participant. The Supreme Court stated:

> "With the possible exception of the situation in which the State is acting as a market participant, any action that qualifies as state action is *ipso facto* exempt from the operation of the antitrust laws." (*City of Columbia v. Omni Outdoor Advertising*, 499 U.S. 365 (1991))

And:

> "The rationale of Parker was that, in light of our national commitment to federalism, the general language of the Sherman Act should not be interpreted to prohibit anticompetitive actions by the States in their governmental capacities as sovereign regulators. The sentences from the opinion quoted above simply clarify that this immunity does not necessarily obtain where the State acts not in a regulatory capacity, but as a commercial participant in a given market." (*City of Columbia v. Omni Outdoor Advertising*, 499 U.S. 365 (1991))

The fact that the State has acted not in sovereign capacity but as a private market participant, voids all claims of sovereign immunity. The Plaintiff believes that actions *ex contractu*, regardless of whether the contract is written, implied, or void, are never qualified for 11th Amendment sovereign immunity. As a result, even if the Plaintiff does not prevail on its antitrust claim, this Court could rule on the contractual questions anyway given that the claims involve both State and Federal law under the Federal question jurisdictional basis. I.e., the fundamental question in whether sovereign immunity applies is probably not whether the *claim*

5

asserted is an antitrust claim, but whether the questioned *actions* leading to the claim are made within sovereign capacity. In this case all of the claims arise due to the Defendant's market participation.

The rationale behind Interstate Commerce Jurisdiction is that the Federal Government, not the States, has the preemptive right to regulate interstate commerce. Both the State Government and the Federal Government have concurrent jurisdiction to regulate commerce. When the state actively supervises anticompetitive conduct, those regulations can be upheld under the State's concurrent jurisdiction to regulate commerce. That being said, when the state acts not as a regulator but as a market participant it is subject to the same laws as other market participants, including the antitrust acts. The Federal Government's authority to subject the state to suit arises from it's preemptive jurisdiction over interstate commerce. The Federal Government can set conditions for the participation in interstate commerce, including upon the States that they waive sovereign immunity; such a waiver exists under the common law. The only reasons that the State can claim sovereign immunity when it passes regulations are that under the cannons of statutory construction, the specific prevails over the general and statutes are interpreted not to implicitly repeal other statutes. Thus, as the antitrust acts do not explicitly preempt state laws, state law can authorize contradictory rules. This does not mean, outside of a statutory scheme, the State can avoid the antitrust acts under concurrent commerce jurisdiction, because statutory law is superior to administrative law; specific administrative law is inferior to general statutory law. i.e. the Board

of Regents is bound by antitrust law absent a State or Federal statute authorizing them to the contrary and cannot claim sovereign immunity for these violations because of their market participation.

### 2.3. Inherent Jurisdiction

Furthermore, Georgia courts will not hear the complaints, depriving the Plaintiff of due process of law. Under State Law, the Defendant is immune to suit in State courts over this issue:

> "[A]n implied contract will not support a waiver of immunity under the provisions of the Georgia Constitution." (*Board of Regents of the University System of Georgia v. Barnes*).

Under the Constitution of the United States:

> "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." (U.S Constitution, 14th Amendment, Section 1)

Under due process guarantees, the States must hold a due process hearing to deprive the Plaintiff of property. However, no facts are available showing that the State has designed any court or any administrator to hold *any* process what-so-ever. There is not necessarily a state form to vindicate the Plaintiff's interests.

Furthermore, given that under this precedent absolutely no state form may be available for the Plaintiff to vindicate the Plaintiff's complaint, there is likely no State opportunity for the Plaintiff to vindicate his rights.

To provide sovereign immunity in this case, given that there is no evidence available suggesting that there is anyone the Plaintiff could sue in official capacity to obtain recovery, would have the result that the Plaintiff be completely deprived of due process. Then sovereign immunity would completely eliminate the Plaintiff's right to due process. This irreconcilable conflict between the 11th and 14th Amendments must be resolved in favor of the 14th Amendment because it is a more recent amendment and implicitly repeals the notion of sovereign immunity to the extent that it conflicts with the 14th Amendment. As a result, this court has Inherent Jurisdiction over the State to enforce the constitution.

If there are any facts suggesting that there is an entity which the Plaintiff could sue in order to vindicate the Plaintiff's Due Process rights, this must be included with a motion for summary judgment, not a motion to dismiss. External matters are not appropriate within a motion to dismiss.

## 2.4. Primacy Jurisdiction

The Plaintiff agrees with the Defendant that certain paragraphs of the original complaint involve ambiguous questions of State law that should be decided by a State court if it becomes necessary to rule upon them, but disagrees with the Defendant's implication that this merits dismissal. The Federal Courts have juris-

diction to hear cases which involve both State and Federal law. The Federal courts have the authority to determine questions of federal law to the exclusion of other courts under what I will call the "Federal Primacy Doctrine". When State law is called into question which does not have a clear resolution, the proper procedure is to *remove* the case to State court – not dismiss it – for the State Court to determine the issues of State law present, and then return the case to Federal Court once the questions of state law have been decided. The Supreme Court stated:

> "Despite these uncertainties arising from application of Windsor - which decision, we repeat, does not require that federal claims be actually litigated in the state courts - a party may readily forestall any conclusion that he has elected not to return to the District Court. He may accomplish this by making on the state record the "reservation to the disposition of the entire case by the state courts" that we referred to in Button. That is, he may inform the state courts that he is exposing his federal claims there only for the purpose of complying with Windsor, and that he intends, should the state courts hold against him on the question of state law, to return to the District Court for disposition of his federal contentions. Such an explicit reservation is not indispensable; the litigant is in no event to be denied his right to return to the District Court unless it clearly appears that he voluntarily did more than Windsor required and fully litigated his federal claims in the state courts. When the reservation has been made, however, his right to return will in all events be preserved." (*England v. Medical Examiners*, 375 U.S. 411 (1964)).

And the Supreme Court also Stated:

> "In thus expanding federal judicial power, Congress imposed the duty upon all levels of the federal judiciary to give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal

constitutional claims. Plainly, escape from that duty is not permissible merely because state courts also have the solemn responsibility, equally with the federal courts, [...] to guard, enforce, and protect every right granted or secured by the Constitution of the United States[.]" [internal quotations and citations omitted] (*Zwickler v. Koota*, 389 U.S. 241 (1967)).

"Abstention is a judge-fashioned vehicle for according appropriate deference to the respective competence of the state and federal court systems. Its recognition of the role of state courts as the final expositors of state law implies no disregard for the primacy of the federal judiciary in deciding questions of federal law." [internal quotation marks and citations omitted] (*England v. Medical Examiners*, 375 U.S. 411 (1964)).

Though the State courts are not "inadequate", federal courts have Primacy Jurisdiction over state courts in regard to questions of federal law. The Court may address any relevant issues of state law by removal.

## 2.5. Analysis of State Case Law

The fact that Georgia law recognizes State sovereign immunity for the Board of Regents does not imply federal sovereign immunity under the 11th Amendment to the U.S. Constitution. The Georgia Supreme Court's decision in *Olvera v. Univ. Sys. of Georgia's Bd. of Regents* does not apply in this circumstance. Georgia's Supreme Court is not tasked with providing authoritative interpretations of Federal Law. Whether an agency is immune to suit in State Court in contrast to Federal Court is in fact two different questions decided based on two different bodies of law that provide divergent opinions on the concept of "sovereign immunity".

10

The Supreme Court has also required anticompetitive practices to be "clearly articulated and affirmatively expressed as state policy" (*FTC v. Phoebe Putney Health System*). It is difficult for the Plaintiff to interpret the Board of Regent's grant of authority to regulate the public university system as a clearly articulated and affirmatively expressed state policy permitting those universities to engage in anticompetitive conduct; especially so in the culinary services(food) market.

The same principle appears to be affirmed under Georgia law, that sovereignty does not extend to the "public utilities" of the State when they enter into contracts, which in this circumstance is analogous to the Board of Regents:

> "The fact that a business or enterprise is, generally speaking, a public utility, does not make every service performed or rendered by it a public service, but it may act in a private capacity as distinguished from its public capacity, and in so doing is subject to the same rules as a private person." (*GA. POWER CO. v. GA. PUBLIC SERVICE COMM,* 211 Ga. 223, 228 (Ga. 1954))

## 2.6. Analysis of Federal Case Law

In regard to *Idaho v. Coeur d'Alene Tribe of Idaho*, which the Defendant cites, this case reiterates that, yes, sovereign immunity is a thing. It also stated that the *Ex Parte Young* exception was unavailable due to the particulars of that case. The present case, in contrast to *Idaho*, does not involve disputes over sovereign territory boundaries, which were essential to the ruling in *Idaho*.

*Ex Parte Young* provides an exception that in the general case involves suing state officials to enjoin them from enforcing unconstitutional laws. The apparent

11

logic behind this is that if a law is unconstitutional, the state cannot authorize anyone to enforce it, hence sovereign immunity is not implicated.

Neither case contradicts *NORTH CAROLINA STATE BD. OF DENTAL EX-AMINERS v. FTC*, and even if it did, since *North Carolina Board of Dental Examiners vs. FTC* is a more recent case, it would implicitly overrule any conflicting precedents.

The State's contention that "The state's immunity against antitrust actions is well established" by *Parker v. Brown* is inapplicable in this case for the essential reasons outlined above.

*Walker v. Mich. PSC* is a 6th Circuit case, and not binding precedent on this Court, therefore; I do not otherwise address it because it is immaterial.

*Edelman v. Jordan*, which the Defendant cites, is an illustrative case:

> "(a) A suit by private parties seeking to impose a liability payable from public funds in the state treasury is foreclosed by the Amendment if the State does not consent to suit.
>
> [...]
>
> (c) The State of Illinois did not waive its Eleventh Amendment immunity and consent to the bringing of respondent's suit by participating in the federal AABD program." (*Edelman v. Jordan*, 415 U.S. 651 (1974))

However, this case is inapplicable. The Plaintiff's due process rights place the burden of proof on the Defendant, because the monies were taken without due process of law. The Plaintiff should have been given a hearing to contest the Defendant's charges, but was not.

12

Furthermore, there is no evidence on the record to suggest that the monies would be taken from the treasury of the state. Even if this were the case, the motion should still be denied because it would be improper to introduce it within a motion to dismiss and the Defendant could introduce such evidence in a motion for summary judgment. A motion to dismiss does not look further than the pleadings, external facts, such as whether or not the monies would be taken from the State treasury, do not belong in a motion for dismissal. The Defendant could file a motion for summary judgment with supporting evidence. In any case, there are no supporting affidavits which can lead the court to this conclusion. For example, the Board of Regents may or may not have a separate bank account from the State treasury, and Kennesaw State University may or may not have a separate bank account from the Board of Regents. If Kennesaw State University does have a separate bank account from the Board of Regents then it would be quite proper for damages to be paid out of that account, even absent an antitrust/market participant waiver of sovereign immunity.

## 2.7. Analysis of Defendant's Arguments for Sovereign Immunity

The Defendant's contention that "Here, the mandatory meal plan obviously constitutes a state action as the state is mandating that students at Kennesaw State University must purchase the meal plan absent a health or financial excuse." seems to overlook the Supreme Court's definitions of "state action" for sovereign immunity purposes. The Supreme Court does not appear to consider decisions by unelected

boards as "state action to which sovereign immunity applies".

### 3. Standing

Defendant's contention that the Plaintiff does not have a "private right of action" appears to the Plaintiff to be completely without merit. The Defendant's contention that the Plaintiff does not have a "private right of action" appears to be another way of saying that the Plaintiff does not have standing. The Defendant appears to believe that the Plaintiff must be authorized by statute to bring a suit. However, the Plaintiff is authorized by the Federal Constitution to "petition the government for redress of grievances". Furthermore: "[T]he federal question becomes not merely a possible defense to the state law action, but an independent claim both necessary and sufficient to make out the plaintiff's cause of action." (*Bivens, v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1999)).

The Plaintiff has standing in this case because the Plaintiff has been harmed monetarily by the conduct of the Board of Regents. This harm is both traceable directly to the Defendant's conduct and the harm is both concrete and particular. The Plaintiff does not need to be "authorized" by a statute to bring suit on his constitutional claims, rather, the Federal constitution itself grants the Plaintiff a "private right of action", i.e. standing.

## 4. Illegal Tying Arrangement Claim

A conspiracy in restraint of trade is not the only possible form of violating the Sherman and Clayton acts, in particular, the Plaintiff did allege in the complaint that the Defendant created an illegal *tying arrangement*. While the supreme court has recently moved away from *per se* illegally of tying arrangements, it has not done so entirely; a tying arrangement may still be illegal *per se* if certain conditions are met.

## 4.1. Facts Required to Show Tying Arrangement

The Supreme Court's precedents in this area are illustrative of this fact. First, in order to determine whether the complaint alleges sufficient facts to suggest that the Defendant has created an illegal tying arrangement, we must first determine if a tying arrangement exists. "A tying arrangement may be defined as an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier." (*Northern Pacific Railway Company and Northwestern Improvement Company, v. United States Of America.*, 356 U.S. 1 (1958)) This definition was reiterated in *Eastman Kodak v. Image Technical Servs.*, 504 U.S. 451 (1992). Clearly the Plaintiff has pleaded sufficient facts to establish that the Board of Regents attempts to require the Plaintiff to purchase mandatory meal plans in order to purchase tuition. This constitutes the essential elements of a ty-

15

ing arrangement. Therefore, the Plaintiff has pleaded sufficient facts to show the Defendant has created a tying arrangement. The next question turns to whether this tying arrangement is illegal.

## 4.2. Facts Required to Show Tying Arrangement is Illegal

According to the United States Supreme Court, "[t]ying arrangements need only be condemned if they restrain competition on the merits by forcing purchases that would not otherwise be made." (*Jefferson Parish Hosp. Dist. v. Hyde* 466 U.S. 2 (1984)). "The analysis of the tying issue must focus on the [provider's] sale of services to its [customers], rather than its contractual arrangements with the providers of [...] services." [edited for generalization] (*Jefferson Parish Hosp. Dist. v. Hyde*, 466 U.S. 2 (1984)). "In making that analysis, consideration must be given to whether [the service provider is] selling two separate products that may be tied together, and, if so, whether they have used their market power to force their [customers] to accept the tying arrangement." [edited for generalization] (*Jefferson Parish Hosp. Dist. v. Hyde*, 466 U.S. 2 (1984)). The Plaintiff has pleaded sufficient facts to show that the tying arrangement by the Defendant must be condemned. The Plaintiff has pleaded that culinary services and food are unrelated services; and this is the same as pleading them to be different markets. Furthermore, the Plaintiff has pleaded that the Plaintiff does not wish to purchase the mandatory meal plans. Thus, the mandatory meal plans would constitute forcing the Plaintiff to make purchases that would not otherwise be made. These essen-

tial elements for an illegal tying arrangement are met, therefore; the Plaintiff has pleaded a claim upon which relief can be granted.

### 4.3. Definition of Market Power Within the Context of a Tying Arrangement

Some questions may remain based on the Defendant's confusing defense. Here I will address them. The requirement that an entity posses market power is essential to prevail in a claim based on a tying agreement, rather than establishing proof of a monopoly. As explained by the Supreme Court, "[a]greements which tend to create a monopoly being forbidden, it is immaterial that the tendency is a creeping one, rather than one that proceeds at full gallop; nor does the law await arrival at the goal before condemning the direction of the movement." [internal quotation marks omitted] (*International Salt Co., Inc. v. United States*, 332 U.S. 392 (1947)).

"For purposes of determining appreciable economic power in the tying market, [the Supreme Court's] precedents have defined market power as the power to force a purchaser to do something that he would not do in a competitive market, and have ordinarily inferred the existence of such power from the seller's possession of a predominant share of the market." (*Eastman Kodak Co. v. Image Technical Services*, Inc. 504 U.S. 451 (1992)).

It is not necessary for the Board of Regents to posses market power in the culinary services market. "The essence of illegality in tying agreements is the wielding of monopolistic leverage; a seller exploits his dominant position in one

market to expand into another." (*Times-Picayune Pub. Co. v. United States*, 345 U.S. 594 (1953)).

**5. Due Process Claims**

The Defendant claims that the Plaintiff fails to state any claim which alleges a due process violation. In this case, the Plaintiff was deprived property (the monies in the amount of the meal plans) without due process of law.

The Supreme Court stated:

> "(a) Having chosen to extend the right to an education to people of appellees' class generally, Ohio may not withdraw that right on grounds of misconduct absent fundamentally fair procedures to determine whether the misconduct has occurred, and must recognize a student's legitimate entitlement to a public education as a property interest that is protected by the Due Process Clause, and that may not be taken away for misconduct without observing minimum procedures required by that Clause." (*Goss v. Lopez*, 419 U.S. 565 (1975))

Because the Defendant attempts to require students to purchase meal plans in order to obtain education, the Plaintiff has a right to a Due Process hearing. Because the Plaintiff was already a student, and already registered for classes without being properly informed about the additional meal plan charge, the Defendant cannot condition tuition on additional charges without due process. Furthermore, the Plaintiff has an independent property interest in his monies.

Before a due process takings claim is litigated, a Plaintiff must first give the state an opportunity to resolve the issue, but due to *res judicta* a state court deci-

18

sion on the matter would final. This seems to conflict with the Federal Primacy Doctrine, and the Plaintiff believes the resolution of this conflict is that the Plaintiff may use the *England* procedure; the Plaintiff may first file the case in a Federal District Court which could then remove the case to State court in order to rule "in light of" federal law, returning the case to federal court afterwards to determine if the State court has ruled consistently with due process requirements.

## 6. Board of Regents Policy Manual Claims

As to the policy manual, it states:

> "Food service fees are defined as fees paid by students who elect to choose an institutional food service plan." (Board of Regents' Policy Manual § 7.3.2.2)

The Plaintiff has pleaded that the Plaintiff did not consent to the meal plans. Because the Plaintiff did not consent to the meal plans, the Plaintiff did not elect to choose a food service plan. In order to "elect" to obtain a meal plan, the Plaintiff must have chosen it consensually. Because the Plaintiff did not elect to choose a food service plan, the fee must be a "mandatory fee" and not a "food service fee". The Defendant's own citation states that mandatory fees must be approved by the Board of Regents, and Plaintiff has pleaded belief that this authorization does not exist. For the purposes of a motion to dismiss, the Plaintiff's allegations must be assumed to be true. Whether or not the mandatory meal plans were approved is a question of fact.

19

Plaintiff has standing to bring the suit on this basis because the Plaintiff has suffered actual and concrete harm directly traceable to the Defendant's conduct in the form of lost monies.

## 6.1. Exclusion of External Materials in a Motion to Dismiss

Nonetheless however, although this is independently grounds to uphold the claim, the Court should not rule upon it unless it determines that the cited portions of the policy manual are permissible material within a motion to dismiss, because otherwise the Board of Regent's contentions in this area must be ignored. A motion to dismiss can look no further than the pleadings. In order to introduce matters beyond the Pleadings, they must be included within a motion for summary judgment, not a motion to dismiss. A motion for summary judgment is inappropriate at this time and therefore the Court should disregard this part of the Defendant's argument at this time. This material is external because it is a policy manual rather than a set of formal regulations.

## 7. Negative Commerce Clause Claim

The Supreme Court stated:

> "(a) The first step in analyzing a law under the negative Commerce
> Clause is to determine whether it discriminates against, or regulates
> evenhandedly with only incidental effects on, interstate commerce. If
> the restriction is discriminatory – i.e., favors in-state economic inter-
> ests over their out-of-state counterparts – it is virtually *per se* invalid.

> By contrast, nondiscriminatory regulations are valid unless the bur-
> den imposed on interstate commerce is clearly excessive in relation
> to the putative local benefits." [internal quotation marks and citations
> omitted] (*Pike v. Bruce Church, Inc.*, 397 U. S. 137)

Because the Defendant's actions favor in-state providers over out of state providers,

the mandatory meal plan is "virtually *per se* invalid".

## 8. All Other Claims

The Plaintiff believes that the Plaintiff has pleaded sufficient facts to uphold the

Plaintiff's other claims, or at least that they consist of a matter of first impression.

(Plaintiff's Amended Complaint)

## 9. Burden of Motion to Dismiss

In Twombly, the Supreme Court held:

> "This case presents the antecedent question of what a plaintiff must
> plead in order to state a claim under §1 of the Sherman Act. Fed-
> eral Rule of Civil Procedure 8(a)(2) requires only "a short and plain
> statement of the claim showing that the pleader is entitled to relief,"
> in order to "give the defendant fair notice of what the ...  claim is
> and the grounds upon which it rests," Conley v.  Gibson, 355 U. S.
> 41, 47 (1957). While a complaint attacked by a Rule 12(b)(6) motion
> to dismiss does not need detailed factual allegations, ibid.; Sanjuan
> v.  American Bd.  of Psychiatry and Neurology, Inc., 40 F. 3d 247,
> 251 (CA7 1994), a plaintiff's obligation to provide the "grounds" of
> his "entitle[ment] to relief" requires more than labels and conclusions,
> and a formulaic recitation of the elements of a cause of action will not
> do, see Papasan v.  Allain, 478 U. S. 265, 286 (1986) (on a motion

to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235–236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), see, e.g., Swierkiewicz v. Sorema N. A., 534 U. S. 506, 508, n. 1 (2002); Neitzke v. Williams, 490 U. S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U. S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely")." (*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

In the same case, the Supreme Court stated:

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. See Sanjuan, 40 F. 3d, at 251 (once a claim for relief has been stated, a plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint"); accord, Swierkiewicz, 534 U. S., at 514; National Organization for Women, Inc. v. Scheidler, 510 U. S. 249, 256 (1994); H. J. Inc. v. Northwestern Bell Telephone Co., 492 U. S. 229, 249–250 (1989); Hishon v. King & Spalding, 467 U. S. 69, 73 (1984). Conley, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." (*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007))

The Plaintiffs in the Twombly case did not allege any specific facts that showed that the conduct of the Defendant was illegal. Essentially, the Plaintiff only alleged facts showing that the Defendant's conduct was suspicious. In this case however,

22

actual pleaded facts exist which show the basis of an actual tying arrangement antitrust violation. The Plaintiff does not need to prove the antitrust claim in the complaint.

## 10. List of Cited Case Law

### 10.1. State

- Board of Regents of the University System of Georgia v. Barnes
- Olvera v. Univ. Sys. of Georgia's Bd. of Regents
- GA. Power Co. v. GA. Public Service Comm, 211 GA. 223, 228 (Ga. 1954)

### 10.2. Federal

- North Carolina State Bd. of Dental Examiners v. FTC, 574 U.S. ___ (2015)
- City of Columbia v. Omni Outdoor Advertising, 499 U.S. 365 (1991)
- Fed. Trade Comm'n v. Phoebe Putney Health Sys., Inc., 568 U.S. ___ (2013)
- Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261 (1997)
- Ex Parte Young, 209 U.S. 123 (1908)
- Parker v. Brown, 317 U.S. 341 (1943)
- Northern Pacific Railway Company and Northwestern Improvement Company, v. United States Of America., 356 U.S. 1 (1958)
- Eastman Kodak v. Image Technical Servs., 504 U.S. 451 (1992)

23

- Jefferson Parish Hosp. Dist. v. Hyde 466 U.S. 2 (1984)

- International Salt Co., Inc. v. United States, 332 U.S. 392 (1947)

- Times-Picayune Pub. Co. v. United States, 345 U.S. 594 (1953)

- England v. Medical Examiners, 375 U.S. 411 (1964)

- Zwickler v. Koota, 389 U.S. 241 (1967)

- Bivens, v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1999)

- Pike v. Bruce Church, Inc. 397 U.S. 137 (1970)

- Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)

- Goss v. Lopez, 419 U.S. 565 (1975)

## 11. Conclusion

For the reasons listed above and any other reason this Court deems just and proper, the Plaintiff believes that the Defendant's motion is entirely without merit and should be denied in its entirety.

Respectfully submitted,

*[signature]*                    2016-6-29

RYAN PATRICK NICHOLL          Date
950 HUDSON RD SE
APT 202
MARIETTA GA, 30060
(678) 358-7765
*Pro Se Plaintiff Name, Address
and Phone*

24

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Ryan Patrick Nicholl

*Plaintiff*

*v.s.*

Board of Regents of the University

System of Georgia

*Defendant*

Civil Action No. 1:16-CV-1350-AT

## CERTIFICATION OF SERVICE

Upon filing this document I certify that I have served the Board of Regents of the University System of Georgia with "PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S AMENDED MOTION TO DISMISS" and this "CERTIFICATION OF SERVICE" by mailing copies of all aforementioned documents with the United States Postal Service to Defendant's registered counsel, addressed as:

> Brooke E. Heinz
> 40 Capitol Square
> S.W. Atlanta, Georgia 30334-1300

with proper postage attached; and that such service was completed on the date of signature.

1

Respectfully submitted,

*Ryan T. Nicholl*                    2016 -6 -29

RYAN PATRICK NICHOLL        Date
950 HUDSON RD SE
APT 202
MARIETTA GA, 30060
(678) 358-7765
*Pro Se Plaintiff Name, Address
and Phone*

2